IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.    Crim. No. 20-1486 KG

TYSON LEE TERRELL,

    Defendant.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Tyson Terrell's Motion to Dismiss (Motion to Dismiss), filed July 6, 2021.[1] (Doc. 130). The United States filed a response on July 20, 2021. (Doc. 130). Having considered the briefing, the Superseding Indictment (Doc. 93), the controlling law, and for the following reasons, the Court denies the Motion to Dismiss.

*I. The Superseding Indictment*

This case involves the taking of a motorcycle resulting in the death of J.S. Only Counts 1 and 2 are relevant to this Motion to Dismiss. Those are the only counts brought against Terrell.

Count 1 charges conspiracy to commit carjacking against all Defendants. Count 1 alleges that from May 27, 2019, to May 28, 2019, Defendants "were at a mobile home on a property shared by" Defendant Stetson Shane Barnes and Terrell. (Doc. 93) at 2. While there, Defendant Donald Alfred Busch allegedly "solicited the assistance of" Barnes, Jehra Lynn Hedgecock,[2] and Terrell to go "to J.S.'s home to physically assault J.S. and take one of J.S.'s motorcycles." *Id.*

---

[1] Defendant Tyson Lee Terrell also asks for a hearing on the Motion to Dismiss. The Court, however, finds that a hearing will not be helpful in deciding the Motion to Dismiss. Terrell's request for a hearing is denied.

[2] Hedgecock has since pled guilty to the charges brought against her in this case. (Doc. 157).

According to Count 1, "Hedgecock agreed to use her truck to transport the motorcycle that the group intended to take from J.S." *Id.*

Count 1 further alleges that on May 28, 2019, Hedgecock drove Barnes, Busch, and Terrell "to J.S.'s home where they intended to physically assault J.S. and take one of J.S.'s motorcycles." *Id.* Hedgecock purportedly "knocked on the front door of J.S.'s home in an attempt to draw J.S. out of his home." *Id.* at 3. Meanwhile, Busch allegedly found the "motorcycle he intended to take under J.S.'s carport and began the process of pushing the motorcycle off of J.S.'s property." *Id.*

Count 1 alleges that when J.S. exited his home Barnes, Hedgecock, and Busch each pointed a firearm at J.S. *Id.* At the same time, Terrell supposedly "unsuccessfully attempted to jumpstart a different motorcycle while standing under J.S.'s carport." *Id.* According to Count 1, after Barnes, Hedgecock, and Busch pointed their firearms at J.S., "Hedgecock got into the driver's seat of her truck;" "Terrell got into the front passenger seat of" the truck; "Barnes got into the back seat of" the truck; and "Busch pushed the stolen motorcycle off of J.S.'s property." *Id.*

Count 1 also alleges that as Hedgecock drove away from J.S.'s home, "Barnes fired multiple rounds of ammunition from the back seat of … Hedgecock's truck into J.S.'s home." *Id.* "One of those rounds of ammunition" allegedly "struck and killed J.S." *Id.* Hedgecock then purportedly "stopped her truck on the side of the road" so Barnes and Terrell could help Busch load the stolen motorcycle onto the bed of Hedgecock's truck. *Id.* at 4. Finally, Count 1 alleges that Hedgecock drove Barnes, Busch, and Terrell back to Barnes' mobile home. *Id.*

Count 2 charges all Defendants with carjacking resulting in a death as well as aiding and abetting.

## II. The Motion to Dismiss

Terrell seeks to dismiss the carjacking charge and the conspiracy to carjack charge on the basis that the United States has failed to state an offense of carjacking. Terrell specifically argues that the allegations in the Superseding Indictment do not establish the "from the person or presence of another" element of carjacking. In addition, Terrell argues that the United States does not allege facts that show the motorcycles referenced in the Superseding Indictment were "motor vehicles" within the meaning of the carjacking statute because the motorcycles were inoperable and no longer "self-propelled." For the foregoing reasons, Terrell concludes that the carjacking charge and the conspiracy charge predicated on the carjacking offense are subject to dismissal under Fed. R. Crim. P. 12(b)(3)(B)(v). The United States opposes the Motion to Dismiss in its entirety.

## III. Discussion

### A. Rule 12(b)(3)(B)(v) Standard

In general, an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]" Fed. R. Crim. P. 7(c)(1). An indictment satisfies this standard "if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997) (citation omitted).

A defendant may file a pretrial motion alleging a defect in the indictment including, failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). When a defendant files such a pretrial motion, the reviewing court should determine "whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence." *United States v. Pope*, 613

F.3d 1255, 1260 (10th Cir. 2010) (citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)). In its analysis, the court must generally look to the plain language of the indictment and ignore extrinsic factual evidence or attached exhibits. *See Todd*, 446 F.3d at 1067 (explaining that "[c]ourts should [ ] avoid considering evidence outside the indictment when testing the indictment's legal sufficiency"). Moreover, a reviewing court should employ "practical rather than technical considerations." *Dashney*, 117 F.3d at 1205.

    B. *Sufficiency of the Carjacking Charge*

        1. *The "from the person or presence of another" Carjacking Element*

The offense of carjacking occurs when

> [w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so….

18 U.S.C. § 2119. Terrell argues that the allegations in the Superseding Indictment do not establish the "from the person or presence of another" element of carjacking. Terrell contends that the United States only "alleges that the victim was in his home and that the motorcycle was taken from the carport." (Doc. 130) at 2. Terrell also contends that "[t]here is no allegation that the motorcycle was within the reach, inspection, or control of the alleged victim." *Id.* Terrell, therefore, concludes that the allegations in the Superseding Indictment are insufficient to state an offence of carjacking as well as a conspiracy offense predicated on the carjacking charge.

    A vehicle "is stolen from the 'presence' of an individual if 'the victim [is] sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of it.'" *United States v. Brown*, 200 F.3d 700, 705 (10th Cir. 1999) (citation omitted). Section "2119 does not require 'that the property be within

4

easy touch' so long as 'the car was close enough for the victim[ ] to have prevented its taking had fear of violence not caused [the victim] to hesitate.'"  *Id.* (citation omitted).

Here, the United States alleges in the Superseding Indictment that "Busch located the motorcycle he intended to take under J.S.'s carport and began the process of pushing the motorcycle off of J.S.'s property." (Doc. 93) at 3.  Then, "when J.S. emerged from his home," Barnes, Hedgecock, and Busch "each pointed a firearm at J.S." *Id*.  Taking those allegations as true, it is clear that (1) Busch and the targeted motorcycle were under the carport outside of J.S.'s house; and (2) when J.S. came out of his house, Busch saw J.S. and pointed a firearm at J.S.

One can reasonably infer from those allegations that Busch intended J.S., who was outside of his house, to see the firearm.  For Busch's firearm to be visible to J.S., J.S. must have been physically near the carport and the motorcycle, where Busch was located.  *See, e.g.,United States v. Holman*, 446 Fed. Appx. 757, 763 (6th Cir. 2011) (discussing *United States v. Kimble*, 178 F.3d 1163 (11th Cir. 1999) which upheld carjacking conviction noting that victim's "car was not several miles away, but parked right outside the restaurant"); *United States v. Casteel*, 663 F.3d 1013, 1020 (8th Cir. 2011) (concluding that reasonable jury could find "presence" element when victim's car was in driveway, 20 feet from victim's house, and victim was "forcibly confined to a chair" in her house); *United States v. Davis,* 233 Fed. Appx. 292, 295 (4th Cir. 2007) (finding that "although the victim was not inside or immediately next to his car, the vehicle remained proximate to him in the driveway just outside his home"); *United States v. Lake*, 150 F.3d 269, 272-73 (3d Cir. 1998) (finding "presence" where victim was on beach and vehicle was on pathway above beach and out of victim's sight).  That being so, the motorcycle was within J.S.'s "reach, inspection, or control."  *Brown*, 200 F.3d at 705; *see also Casteel*, 663

F.3d at 1020 (finding that victim controlled car in her driveway until defendant "broke into her home" and stole her keys at gunpoint). Furthermore, had it not been for Barnes, Hedgecock, and Busch each pointing a firearm at J.S., as alleged in the Superseding Indictment, J.S. could have maintained control of the motorcycle. *See Casteel*, 663 F.3d at 1020 (finding that had victim not been under defendant's "control and afraid to move from the chair, 'she could have easily walked out the door … and driven away in her car, thus preventing [defendant] from taking it'"); *United States v. Edwards*, 231 F.3d at 933, 937 (5th Cir. 2000) (finding that had victim "*not* been in fear for his safety …, he could have quickly reached his vehicle[, which was parked 15 feet away,] and prevented [defendant] from taking it"). The Court, therefore, concludes that the United States has sufficiently alleged the "from the person or presence of another" element of the offense of carjacking.

### 2. The "Motor Vehicle" Requirement for the Offense of Carjacking

Terrell suggests that the Court use the following definition of "motor vehicle" to determine if a motorcycle falls under the carjacking statute: a "'[m]otor vehicle' includes an automobile, automobile truck, automobile wagon, motorcycle, or any other self-propelled vehicle designed for running on land but not on rails…." 18 U.S.C. § 2311. This definition appears in the National Motor Vehicle Theft Act, also known as the Dyer Act. *See* 15 A.L.R. Fed. 919, § 1[a] (Originally published in 1973) (stating that "term 'motor vehicle' is defined in the National Motor Vehicle Theft Act (18 U.S.C.A. § 2311)" and that this Act is "commonly called the Dyer Act").

Terrell notes that the United States alleges in the Superseding Indictment that the motorcycle Busch allegedly took "had to be pushed off the property" and the motorcycle Terrell allegedly tried "to jumpstart would not start." (Doc. 130) at 3. Terrell, therefore, concludes that

6

"neither motorcycle was a 'self-propelled vehicle' within the meaning of the carjacking statute." *Id.* This conclusion, however, fails for two reasons.

Assuming that the Dyer Act definition of "motor vehicle" applies to the carjacking statute, the Court notes that the Dyer Act definition explicitly enumerates a "motorcycle" as a "motor vehicle." 28 U.S.C. § 2311. A commonsense reading of the Dyer Act definition of "motor vehicle" is that a vehicle "other" than a motorcycle, or any of the enumerated motor vehicles, also can be a "motor vehicle" if it is a "self-propelled vehicle designed for running on land but not on rails…." *Id.*; *see also Carachuri-Rosendo v. Holder*, 560 U.S. 563, 573 (2010) (stating that when interpreting statutory provisions courts "begin by looking at the terms of the provisions and the 'commonsense conception' of those terms"). In other words, a commonsense reading of the Dyer Act definition of "motor vehicle" indicates that a motorcycle is explicitly defined as a "motor vehicle" and that a catch-all provision states that vehicles "other" than the enumerated motor vehicles can be considered "motor vehicles" if they are "self-propelled vehicle[s] designed for running on land but not on rails…." 28 U.S.C. § 2311. Under that reading of the Dyer Act definition of "motor vehicle," the motorcycles at issue here are necessarily "motor vehicles" by virtue of being enumerated as a "motor vehicle."

Terrell, however, interprets the Dyer Act definition of "motor vehicle" to require that any vehicle, including a motorcycle, must be self-propelled to be considered a "motor vehicle." Although the Court rejects that interpretation of the Dyer Act "motor vehicle" definition, the Court will assume for the purpose of this discussion that Terrell's interpretation is correct. The Court observes that courts which have interpreted "self-propelled" when it appears in other statutory definitions of "motor vehicle" have held "the most sensible interpretation of the term 'self-propelled' is that the word defines a quality rather than an action." *United States v.*

*Bibbins*, 637 F.3d 1087, 1095 (9th Cir. 2011). Otherwise, "[t]o conclude that 'self-propelled' refers to an action would lead to the absurd result that a vehicle ceases to be a 'motor vehicle' … whenever it is parked, stopped, or not powering itself." *Id.* In fact, state courts "have uniformly held that the term 'self-propelled' describes a quality that is not abated when a vehicle is not propelling itself." *Id.* (listing cases). "Moreover, two treatises with entries on 'motor vehicles' both conclude that a vehicle remains 'self-propelled' when it is towed or inoperable." *Id.* (citing 60 *C.J.S.* Motor Vehicles § 1 and 7A *Am. Jur.2d* Automobiles § 5); *see also United States v. McKlemurry*, 461 F.2d 651, 652–53 (5th Cir. 1972) (rejecting argument that vehicle without motor was not "motor vehicle" under § 2311 as "hypertechnical, though novel, interpretation of § 2311 [that] runs afoul of the clear intent of Congress in passing the Dyer Act" because allowing "car thieves to escape prosecution by the simple device of removing the car's engine would eviscerate the Act"). Applying the above widely accepted interpretation of "self-propelled," the motorcycles in this case obviously are "self-propelled" vehicles, even if inoperable, because they possess the quality of being able to "operate[] by a power developed within" themselves, i.e., they are powered by gasoline motors, not "muscular power." *McBoyle v. United States*, 43 F.2d 273, 274 (10th Cir. 1930), *rev'd on other grounds,* 283 U.S. 25 (1931) (citation omitted). For this additional reason, the motorcycles in this case are "motor vehicles" subject to the carjacking statute.

   *C. Conclusion*

   For the foregoing reasons, the Court concludes that the allegations in the Superseding Indictment are sufficient to state an offence of carjacking and an offense of conspiracy predicated on the carjacking charge. The Court, therefore, denies the Motion to Dismiss.

   IT IS ORDERED that

1. Terrell's request for a hearing on the Motion to Dismiss is denied; and

2. Defendant Tyson Terrell's Motion to Dismiss (Doc. 130) is denied.

_____
UNITED STATES DISTRICT JUDGE