IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                   Cr. No. 20-1486 KG

STETSON SHANE BARNES,
et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the United States' Motion *in Limine* to Exclude Claims of Self-Defense or Self-Help (Motion in Limine), filed July 12, 2021. (Doc. 137). Defendant Stetson Shane Barnes[1] filed a timely response as did Defendant Tyson Lee Terrell.[2] (Docs. 148 and 156). Having considered the Motion in Limine, the accompanying briefing, the controlling law, and for the following reasons, the Court grants the Motion in Limine in part.

The United States moves to "exclude any claim of self-defense or self-help from voir dire, opening statement[s], witness examinations or otherwise injecting those issues into trial." (Doc. 137) at 6. The United States anticipates that Defendant Barnes will assert a self-defense claim: Defendant Barnes did not discharge his firearm until after the victim of the carjacking, J.S., fired upon him first. The United States also anticipates that Defendant Barnes will raise a

---

[1] Defendant Barnes is charged with conspiracy to commit carjacking (taking a motorcycle from J.S.), carjacking resulting in the death of J.S., brandishing a weapon in the course of the carjacking and through the discharge of the weapon killing J.S., and felon in possession of a firearm and ammunition. (Doc. 93).

[2] Defendant Terrell is charged with conspiracy to commit carjacking (taking a motorcycle from J.S.), and carjacking resulting in the death of J.S. (Doc. 93).

self-help defense by arguing that he did not "carjack" J.S.'s motorcycle because he believed the motorcycle belonged to Defendant Donald Alfred Busch.

"Generally, a defendant must make a threshold showing on the elements of an affirmative defense prior to the presentation of the evidence to the jury." *United States v. Dodge*, 2018 WL 3352965, at *1 (D.N.M.) (citing *United States v. Bailey,* 444 U.S. 394, 412-15 (1980)) (other citation omitted). "A district court can assess the sufficiency of a defendant's affirmative defense before it is presented to a jury as part of its gate-keeping responsibilities." *United States v. Gottesfeld*, 319 F. Supp. 3d 548, 553 (D. Mass. 2018) (citing *United States v. Portillo–Vega*, 478 F.3d 1194, 1197 (10th Cir. 2007)). In fact, a court "can review the sufficiency of defendant's proffered evidence before trial, during trial or after the close of evidence before an instruction on the defense is given to the jury." *Id.* at 553-54 (citing *United States v. Graham*, 663 Fed. Appx. 622, 625–26 (10th Cir. 2016); *Portillo–Vega*, 478 F.3d at 1202).

If a defendant's proposed pretrial defense requires the court to resolve factual issues, the court must accept the defendant's proffered evidence as true. *See United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) (stating that "[f]or purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted") (internal quotation marks omitted). The defendant's pretrial evidentiary proffer must

> meet the minimum standard as to each element of the defense, so that if a jury finds it to be true, it would support the defense. In so doing, the defendant must present more than a scintilla of evidence that demonstrates that he can satisfy the legal requirements for asserting the proposed defense.

*United States v. Tokash*, 282 F.3d 962, 967 (7th Cir. 2002) (citations and internal quotation marks omitted.) "[W]here the evidence proffered ... is insufficient as a matter of law to support the affirmative defense a pre-trial ruling precluding the presentation of the defense at trial is appropriate." *Id.*

I. *Defendant Barnes' Response to the Motion in Limine*

    A. *Claim of Self-Defense*

Defendant Barnes states that he plans to raise the claim of self-defense. Tenth Circuit Criminal Pattern Jury Instruction 1.28 (2021 ed.), the self-defense jury instruction, states:

> A person is entitled to defend [himself] [another person] against the immediate use of unlawful force. But the right to use force in such a defense is limited to using only as much force as reasonably appears to be necessary under the circumstances.
>
> [A person may use force which is intended or likely to cause death or great bodily harm only if he reasonably believes that force is necessary to prevent death or great bodily harm to [himself] [another]].
>
> To find the defendant guilty of the crime charged in the indictment, you must be convinced that the government has proved beyond a reasonable doubt:
>
> *Either*, the defendant did not act in [self-defense] [defense of another],
>
> *Or*, it was not reasonable for the defendant to think that the force he used was necessary to defend [himself] [another person] against an immediate threat.

The right to self-defense, however, may not be available to "a defendant who initiates a violent crime, such as an armed robbery, that results in a fatal shooting … absent a showing that, at the time the shooting occurred, the dangerous situation created by the initial crime had dissipated." *United States v. Desinor*, 525 F.3d 193, 199 (2d Cir. 2008). To show that the initial crime had dissipated, the defendant must "in good faith effectively withdraw[] from any further encounter with his victim (and to make an effective withdrawal he must notify the victim, or at least take reasonable steps to notify him)…." Wayne R. LaFave, 2 *Subst. Crim. L.* § 10.4(e) (3d ed.) (Oct. 2020 update); *see, e.g., Waters v. Lockett*, 896 F.3d 559, 569 (D.C. Cir. 2018) (stating that "aggressor can restore his right to self-defense '[o]nly in the event he communicates to his adversary his intent to withdraw and in good faith attempts to do so'") (citation omitted).

The Court notes that "[a] defendant's burden of production to warrant a self-defense instruction is not onerous." *United States v. Barrett*, 797 F.3d 1207, 1218 (10th Cir. 2015) (internal quotation marks and citation omitted). "It requires only that there be evidence sufficient for a reasonable jury to find in his favor." *Id*.

Defendant Barnes proffers the following facts. Jehra Hedgecock[3] drove Defendants in her pickup truck to J.S.'s home, parking in front of his glass front door. Hedgecock and Defendants exited the pickup truck. Hedgecock knocked on J.S.'s front door while Defendant Barnes stayed near Hedgecock's pickup truck, and Defendants Terrell and Busch went to the carport where the motorcycles were located. When no one answered her knocks, Hedgecock went back to her pickup truck and stood beside it.

J.S. then exited his home through the front door with a pistol in his hand. Upon seeing J.S., Defendant Barnes and Hedgecock assumed defensive positions and each held a firearm while looking at J.S.'s front door. No shots were fired. Someone told J.S. to put his gun away as Defendants began leaving the property. Hedgecock got in the driver's seat of her pickup truck while Defendant Terrell sat in the front passenger seat and Defendant Barnes sat in the back seat. Defendant Busch was pushing a motorcycle down the road away from J.S.'s house.

When Hedgecock, Defendant Terrell, and Defendant Barnes were in the pickup truck, J.S. fired at least three .40 caliber rounds through the glass front door at Defendant Barnes and Hedgecock, narrowly missing their heads by a few inches. Defendant Barnes then returned fire, striking and killing J.S. According to Defendant Barnes, Tristyn Carlo, a witness, stated that J.S. fired his weapon from inside the house and that he fired his firearm first. Hedgecock also stated that J.S. fired his firearm first.

---

[3] Hedgecock pled guilty to the charges in the Superseding Indictment (Doc. 93) on July 22, 2021. *See* (Doc. 157).

Defendant Barnes also proffers that there were three bullet holes in J.S.'s front door and that the three bullets holes were caused by a firearm being fired from the inside of J.S.'s home. Moreover, the bullet holes were not there just prior to this incident. Also, three .40 caliber cartridge cases were found near the inside of the front door and a .40 caliber firearm was found by J.S.'s body.

Defendant Barnes notes that the proffer is supported by surveillance video taken at J.S.'s home, police statements by Carlo and Hedgecock, and various police reports.

Accepting Defendant Barnes' proffers as true, the Court finds that although Defendant Barnes and the other Defendants, including Hedgecock, participated in the alleged initial crime of carjacking at J.S.'s home and that Defendant Barnes, among others, pointed a firearm at J.S. when he exited his home. With that proffer, one could reasonably argue that the initial dangerous situation dissipated when Defendant Barnes, Hedgecock, and Defendant Terrell withdrew in good faith by getting into Hedgecock's truck to drive away from J.S.'s home. Also, one could reasonably argue that Defendant Busch, in good faith, contributed to the dissipation of the dangerous situation by leaving the property on foot while pushing the motorcycle. The act of driving and walking away arguably would have constituted a reasonable attempt to notify J.S. that Defendants and Hedgecock were effectively withdrawing from any further encounter with J.S. Accepting this proffer as true, and even though Defendant Barnes was an initial aggressor, he could reasonably argue that his right to self-defense was restored when he was seated in Hedgecock's pickup truck and J.S. fired his weapon at him and Hedgecock.

Given that the right to self-defense arguably was restored at the time J.S. fired his weapon at Defendant Barnes and Hedgecock, and considering the proffer that J.S. fired his weapon at the heads of Defendant Barnes and Hedgecock, a reasonable jury could find that

5

Defendant Barnes reasonably believed it was necessary to use deadly force against J.S. to prevent death or great bodily harm to himself and to Hedgecock and Defendant Terrell. Defendant Barnes, therefore, has carried his burden of demonstrating that he is entitled to a claim of self-defense. Of course, the issue of self-defense can be revisited at trial depending on the admissible evidence presented to the jury. At this time, the Court will deny the United States' motion in limine to exclude Defendant Barnes' claim of self-defense.

### B. *Claim of Self-Help*

Defendant Barnes states that he will not bring a "self-help" defense or claim. Nonetheless, Defendant Barnes notes that the open and unguarded behavior of Defendants and Hedgecock depicted in the surveillance video recorded at J.S.'s house, Hedgecock's written statement to authorities and her interviews with authorities, and a statement by Carlo show that the motorcycle Defendant Busch took belonged to him. Consequently, Defendant Barnes contends he "can present evidence that he thought or was led to believe the motorcycle belonged to Mr. Donald Busch and it was permissible/lawful to obtain it." (Doc. 148) at 15. Defendant Barnes asserts that such evidence does not indicate "self-help but innocent actions which goes to the defense of no intent to car jack or use a weapon to car jack." *Id.* at 16-17.

As the Court already has acknowledged, an intent to steal a vehicle or any other "subjective motivation in acquiring possession or control of the victim's vehicle is irrelevant to whether the government established the 'taking' element of 18 U.S.C. § 2119," the carjacking

statute.[4] *United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006); *see also United States v. Payne*, 83 F.3d 346, 347 (10th Cir. 1996) (disagreeing with defendant that "taking element requires an intent to steal"); (Doc. 171) at 6; (Doc.170) at 6.  Moreover, an intent to steal a vehicle or a "subjective motivation" in taking a vehicle is irrelevant to the intent element of carjacking:  an intent "to seriously harm or kill the driver if that action had been necessary to complete the taking of the car" or vehicle.  *Gurule*, 461 F.3d 1238, 1243; *Holloway v. United States*, 526 U.S. 1, 11–12 (1999).  Hence, Defendant Barnes' subjective belief that he was helping Defendant Busch get his motorcycle, a self-help claim, is irrelevant to both the taking and intent elements of carjacking.  Evidence of that belief, whether true or not, is inadmissible under Fed. R. Evid. 402 (providing for admissibility of relevant evidence).

Furthermore, the probative value of evidence of that self-help claim is "substantially outweighed by a danger of … unfair prejudice, confusion of the issues, [or] misleading the jury…."  Fed. R. Evid. 403.  As the United States correctly notes, a self-help narrative could mislead a jury into believing that self-help is an affirmative defense to carjacking, "improperly bolster the arguments and presentation of defense counsel, create a sideshow designed to distract the jury from its sworn duty, and invite jury nullification."  (Doc. 137) at 6.  Thus, self-help evidence is inadmissible under Rule 403 as well.  For the foregoing reasons, the Court will exclude any claim of self-help from voir dire, opening statements, witness examinations, and arguments before the jury, and any claim of self-help will otherwise be excluded from the trial.

---

[4]   To convict a defendant of carjacking, the United States must prove beyond a reasonable doubt the following elements:
(1) that [the defendant] took a motor vehicle from the person or presence of another; (2) that he did so by force, violence or intimidation; (3) that [the defendant] intended to cause death or serious bodily harm; and (4) that the motor vehicle had been transported, shipped, or received in interstate or foreign commerce.

*United States v. Gurule*, 461 F.3d 1238, 1243 (10th Cir. 2006).

*II. Defendant Terrell's Response to the Motion in Limine*

Defendant Terrell does not anticipate raising a claim of self-defense or a defense based on self-help. However, Defendant "Terrell may argue that he did not knowingly join a conspiracy to carjack" and "that he lacked the requisite intent to commit carjacking." (Doc. 156) at 7. To make these arguments, Defendant Terrell will rely on statements made by the alleged co-conspirators regarding the scope of the conspiracy, their intentions, and Defendant Terrell's own intent.

As discussed above, an intent to steal a vehicle or a subjective motivation in taking a vehicle is not relevant to the carjacking charge. Thus, evidence from either the co-conspirators or Defendant Terrell that they subjectively believed that the motorcycle they helped to take belonged to Defendant Busch will be excluded as irrelevant under Fed. R. Evid. 402. Additionally, as stated above, the probative value of that self-help narrative is "substantially outweighed by a danger of … unfair prejudice, confusion of the issues, [or] misleading the jury," another reason to exclude self-help evidence. Fed. R. Evid. 403. Of course, Defendant Terrell may offer evidence related to the intent element of carjacking: that neither the co-conspirators nor Defendant Terrell intended "to seriously harm or kill" J.S. "if that action had been necessary to complete the taking of the" motorcycle. *See Holloway*, 526 U.S. at 11-12.

IT IS ORDERED that:

1. the United States' Motion *in Limine* to Exclude Claims of Self-Defense or Self-Help (Doc. 137) is granted in part;

2. Defendant Barnes' claim of self-defense is not excluded at this time, but may be subject to reconsideration later during trial;

3.  the claim of self-help is excluded from voir dire, opening statements, witness examinations, and arguments before the jury; and

4.  Defendants are prohibited from otherwise injecting the claim of self-help into the trial.

_____
UNITED STATES DISTRICT JUDGE